IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM CALVIN BULLARD, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Case No. 3:07-cv-812-WKW-SRW |
| | * |
| STEVEN GALLAHER; FRITO LAY, | * |
| INC.; ROLLING FRITO LAY SALES, | * |
| L.P.; FRANKLIN TIRE & AUTO, INC., | * |
| | * |
| Defendants. | * |

## RESPONSE TO PLAINTIFF'S MOTION TO REMAND

**Frito Lay Inc., Rolling Frito Lay Sales LP,** and **Steven Gallaher** (collectively referred to as "Frito Lay") state as follows in response to the Plaintiff's Motion to Remand:

1.    Plaintiff's Motion to Remand asserts two arguments. First, Plaintiff argues that he is an employee of Franklin Tire (not an independent contractor) and, thus, entitled to workers' compensation benefits. As stated in the Notice of Removal, however, even if the Plaintiff disputes his status as an independent contractor, Franklin Tire is still fraudulently joined. Not only was the Plaintiff's notice insufficient, so as to bar any workers' compensation claim, but, as explained in Paragraph 7 below, Plaintiff has *admitted* to Franklin Tire that he has no intention of pursuing his claim against Franklin Tire and that he sued Franklin Tire only to prevent removal. *See* Exhibit A (David Franklin Aff.) at ¶ 2.

2.    The issue of adequate notice is the subject of the Plaintiff's second argument in the Motion to Remand. Plaintiff claims that Franklin Tire is not fraudulently joined because he reported the accident to Franklin Tire and can establish a cause of action against Franklin Tire for workers' compensation benefits.

3. In arguing that he gave proper notice of his accident to Franklin Tire and that he can establish a cause of action for workers' compensation benefits, the Plaintiff attempts to distinguish this case from *Mid-South Elec. Co. v. Jones*, 848 So. 2d 998 (Ala. Civ. App. 2002), where the Court of Civil Appeals reversed the trial court's denial of the employer's post-judgment motion on the issue of proper notice. However, the facts of *Jones* are very similar to the instant case: (1) the *Jones* plaintiff gave verbal notice of her accident; Mr. Bullard gave verbal notice of his accident; (2) the *Jones* plaintiff did not file a workers' compensation claim; Mr. Bullard did not file a workers' compensation claim; (3) the *Jones* plaintiff chose not to be treated by a physician selected by her employer; Mr. Bullard chose not to be treated by a physician selected by his employer; (4) the *Jones* plaintiff chose to be treated by a physician of her own choosing; Mr. Bullard chose to be treated by four physicians of his own choosing; (5) the *Jones* plaintiff waited eleven months before filing a workers' compensation claim; Mr. Bullard waited fourteen months before filing this workers' compensation lawsuit; and (6) the *Jones* plaintiff had two back surgeries; Mr. Bullard had one neck surgery. *Id*. at 1000; *see also*, Exhibit B (Robert Franklin Aff.) at ¶ 3; and Exhibit C (Letter from Plaintiff's Attorney). Just as in the *Jones* case, Mr. Bullard made a deliberate decision not to elect workers' compensation coverage and to receive extensive medical treatment (including neck surgery) from physicians of his own choosing, and his claim for workers' compensation benefits is now barred.

4. Contrary to the Plaintiff's assertion, the *Jones* case does not turn on the fact that the plaintiff took disability leave. The holding in *Jones* is exactly what Frito Lay quoted in its Notice of Removal:

> We conclude that the employee cannot now, after making a deliberate decision not to elect workers' compensation coverage and to receive extensive medical treatment (including two surgeries) from a physician of her own choosing, decide to seek workers' compensation benefits.

*Id.* (citations omitted). The disability leave taken by the *Jones* plaintiff was only one factor that the court examined. It is irrelevant whether the Plaintiff sought medical treatment through disability insurance or his personal health insurance or whether he simply paid his own medical bills. The point is that the Plaintiff deliberately sought extensive medical treatment from four doctors for fourteen months outside his employer's workers' compensation policy.

5. The *Jones* case also does not turn solely on whether the employee told the employer that the accident was work-related. The Plaintiff attempts to distinguish the instant case from *Jones* by arguing "there is no evidence that Bullard informed Franklin Tire that his injury was not work related." However, there is nothing in *Jones* to indicate that the plaintiff in that case informed her employer that her injury was not work-related. *Id.* at 1000. To the contrary, the plaintiff in *Jones* testified that she told her supervisor she had injured her back. *Id.* at 1000. The court stated that this testimony "would normally be substantial evidence indicating that the employee gave the employer notice of the accident," but it ruled the notice was improper due to the employee's deliberate decision not to elect workers' compensation coverage and to receive extensive medical treatment from a physician of her own choosing. *Id.*

6. Interestingly, Plaintiff claims that he told Franklin Tire about the accident, but nowhere does he claim that he told Franklin Tire he wanted to make a workers' compensation claim or that he needed to see a workers' compensation doctor. According to Robert Franklin of Franklin Tire, the Plaintiff never sought workers' compensation benefits, never asked to be referred to a medical provider through Franklin Tire or its workers' compensation carrier, and never indicated that there was a possibility he would be making a workers' compensation claim. (Robert Franklin Aff. ¶ 3.) Although the Plaintiff informed Franklin Tire that he had been in an accident, obtaining extensive medical treatment for fourteen months by doctors of Mr. Bullard's

own choosing defeats the purpose of the notice requirement of ALA. CODE § 25-5-78 by depriving Franklin Tire of the ability to make a prompt examination, provide proper treatment, and protect itself against simulated or exaggerated claims. *Ex parte Brown & Root Inc.*, 726 So. 2d 601, 602 (Ala. 1998). Therefore, pursuant to *Jones*, Plaintiff cannot now seek workers' compensation benefits, and there is no possibility that the Plaintiff can establish a cause of action against Franklin Tire.

7. Furthermore, it is clear that Franklin Tire is a fraudulently joined defendant because the Plaintiff has admitted that he has no intention of pursuing his claim and that Franklin Tire was added to this lawsuit solely to prevent removal. After Franklin Tire was served with a copy of the Summons and Complaint, David Franklin of Franklin Tire questioned Mr. Bullard about the lawsuit because he had no idea that Mr. Bullard ever expected Franklin Tire to provide him with workers' compensation benefits. (David Franklin Aff. at ¶ 2.) In response, the Plaintiff said not to worry about the lawsuit because the Plaintiff did not intend to pursue his claims against Franklin Tire and that Franklin Tire had been added to the lawsuit only to keep the case in a certain court. *Id.*

8. Our courts have stated: "[I]t is irrelevant whether a plaintiff joins defendants with such intent [to avoid federal court] as long as legitimate claims are alleged against all defendants **and** the plaintiff has the intent to pursue a judgment against the defendants." *Brooks v. Paulk & Cope, Inc.*, 176 F.Supp.2d 1270, 1277 (M. D. Ala. 2001) (emphasis added.). Thus, even though the Plaintiff may have a legitimate claim against Franklin Tire because, as Plaintiff points out, the claim was filed within the applicable statute of limitations, Plaintiff's admission to David Franklin makes it clear that he has no intention of pursuing his claims against Franklin Tire.

This tactic is unfair not only to Frito Lay but also to Franklin Tire, a local business that has been forced into litigation despite Plaintiff's express intention not to pursue his claims against it.

9. It is obvious from Plaintiff's conduct that the only target in this case is Frito Lay, that his claim against Franklin Tire is now barred because of his extensive medical treatment by doctors of his own choosing, that the Plaintiff never intended to pursue a claim against Franklin Tire, and that Franklin Tire was added as a defendant solely to keep the case in state court. Thus, Franklin Tire has been fraudulently joined to this lawsuit, and its citizenship should be disregarded for removal purposes. *See Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

10. With Franklin Tire's citizenship disregarded, this case was properly removed to the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

WHEREFORE, Frito Lay respectfully requests the Court to deny Plaintiff's Motion to Remand and to grant any additional relief the Court deems appropriate.

Respectfully submitted,

/s/ Angela R. Rogers
Charles A. Stewart III (CAS067)
Angela R. Rogers (RAI017)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
Email: cstewart@bradleyarant.com
Email: arogers@bradleyarant.com

CERTIFICATE OF SERVICE

      I hereby certify that on October 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Michael Slocumb, Esq.
      Slocumb Law Firm LLC
      2006 Executive Park Drive, Suite A
      Opelika, AL  36801

      Cowin Knowles, Esq.
      Ball, Ball, Mathews & Novak, P.A.
      P. O. Box 2148
      Montgomery, AL  36102-2148

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: None.

      s/ Angela R. Rogers
      Angela R. Rogers (RAI017)
      Bradley Arant Rose & White LLP
      The Alabama Center for Commerce
      401 Adams Avenue, Suite 780
      Montgomery, AL 36104
      Telephone: (334) 956-7700
      Facsimile: (334) 956-7701
      E-mail: arogers@bradleyarant.com

STATE OF ALABAMA          \*

COUNTY OF _LEE_            \*

                          \*

### AFFIDAVIT OF DAVID FRANKLIN

BEFORE ME, a notary public in and for said county in said state, personally appeared David Franklin, who, being by me first duly sworn, deposes and says on oath that he has read this Affidavit and that he is informed and believes that the following facts are true and correct:

1.   My name is David Franklin. I am employed at Franklin Tire & Auto Inc. ("Franklin Tire"). I have personal knowledge of the facts set forth in this affidavit, and I am authorized to make this affidavit on behalf of Franklin Tire.

2.   After Franklin Tire was served with a copy of the Summons and Complaint in the lawsuit brought by Mr. Bullard, I asked him about the lawsuit because I had no idea that he had ever expected Franklin Tire to provide him with workers' compensation benefits. In response, Mr. Bullard said not to worry about the lawsuit because he did not intend to pursue his claims against Franklin Tire and that Franklin Tire had been added to the lawsuit only to keep the case in a certain court.

FURTHER THE AFFIANT SAITH NOT.

_____
DAVID FRANKLIN

SWORN to and subscribed before me this the _11_ day of October, 2007.

_Cynthia Black_
Notary Public          *My Commission Expires February 21, 2011*
My commission expires _____.

[SEAL]



STATE OF ALABAMA        *

COUNTY OF _Lee_        *

## AFFIDAVIT OF ROBERT G. FRANKLIN

BEFORE ME, a notary public in and for said county in said state, personally appeared Robert G. Franklin, who, being by me first duly sworn, deposes and says on oath that he has read this Affidavit and that he is informed and believes that the following facts are true and correct:

1. My name is Robert G. Franklin. I am employed at Franklin Tire & Auto Inc. ("Franklin Tire"). I have personal knowledge of the facts set forth in this affidavit, and I am authorized to make this affidavit on behalf of Franklin Tire.

2. Calvin Bullard does towing for Franklin Tire on an as-needed, on-call basis. He is not a full-time employee of Franklin Tire, and Franklin Tire considers him to be an independent contractor. Even though he uses Franklin Tire's wrecker to do towing, Franklin Tire does not direct the manner in which he does his work.

3. Calvin Bullard was involved in an accident on June 30, 2006. Although Mr. Bullard informed of us the accident, he never indicated that he would be filing a workers' compensation claim, he never filed a claim, and he never asked to be referred to our workers' compensation doctor.

4. Franklin Tire has had no involvement in selecting Mr. Bullard's medical providers or overseeing his medical treatment.



FURTHER THE AFFIANT SAITH NOT.

*[signature]*
ROBERT G. FRANKLIN

SWORN to and subscribed before me this the 10th day of September, 2007.

[SEAL]

*[signature]* Kelly Castleberry
Notary Public
My commission expires

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 15, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS



## SLOCUMB LAW FIRM, LLC

MICHAEL W. SLOCUMB, ESQ.

2006 EXECUTIVE PARK DRIVE, SUITE A
OPELIKA, ALABAMA 36801

TELEPHONE: (334) 741-4110
FACSIMILE: (334) 742-0525
WWW.SLOCUMBLAW.COM
E-MAIL: MIKE@SLOCUMBLAW.COM

Monday, May 7, 2007

**VIA FEDERAL EXPRESS**

Harvey Jones
Sedgwick CMS
750 State Highway 121 Bypass
Suite 190
Lewisville, Texas 75067

Re:  My Client:  **William Calvin Bullard**
     Your Client: **Pepsico, Inc./Rolling Frito Lay Sales, L.P.**
     Date of Loss: **June 30, 2006**
     Claim #:     **2007 066 0230**

Dear Harvey:

Please find the following medical records and expenses pertaining to Calvin Bullard's personal injury claim.

**Medical Records and Expenses:**

| | | |
|---|---|---|
| 1. | Auburn Urgent Care | $ 622.00 |
| 2. | Herring Spine & Rehab, Inc. | 5,045.00 |
| 3. | Alabama Imaging, P.C. | 205.00 |
| 4. | Orthopaedic Clinic, P.C. | 9,025.25 |
| 5. | East Alabama Medical Center | 11,250.86 |
| 6. | Anesthesia Associates of East Alabama | 1,690.00 |
| 6. | The Drug Store | 174.91 |

**TOTAL MEDICAL EXPENSES**              $ 28,013.02
**Lost Wages (21 Weeks x $600/Week)**    $  2,047.00
**Future Medical ($2,000/Annum x 30.92 years)**  $ 61,840.00

### Summary of Accident

The day is Friday, June 30, 2006. The location is U.S. Highway 280 in Russell County, Alabama. The weather is clear and dry. Twelve fifty in the afternoon. Steven Gallaher, an employee of Frito Lay, Inc., drives south on U.S. Highway 280. He is exceeding the posted speed limit of 55 miles per hour. Up ahead, a tow truck is stopped in traffic in the southbound lane of U.S. Highway 280. Mr. Gallaher applies his brakes. He is unable to stop. He strikes the rear bumper of the tow truck stopped in traffic. The tow truck moves forward from a stopped position and strikes the vehicle in front of it. The struck vehicle then moves forward from a stopped position and collides with a fourth vehicle in front of it. The fourth vehicle then moves forward and strikes a fifth vehicle in



MONTGOMERY OFFICE
PARK PLACE CENTER • 8650 MINNIE BROWN ROAD • MONTGOMERY, ALABAMA

Harvey Jones
May 7, 2007
Page Two

front of it. After impacting the tow truck, the driver's head strikes the rear windshield. The windshield shatters. Glass from the windshield is lodged in the driver's head. The driver of the tow truck is my client, Calvin Bullard. You will find a copy of the accident report under **Exhibit A**.

### Venue

As you are aware, the collision occurred in Russell County, Alabama. Your clients are non-residents of the state of Alabama. If my client were to commence litigation, he would do so in the United States District Court for the Middle District of Alabama, Eastern Division. The Middle District of Alabama is a very favorable venue for my client. For more information relating to the counties comprising the Middle District of Alabama and the makeup of the jury venire, please refer to **Exhibit C**.

### Federal Motor Carrier Safety Administration Regulation Violations

This collision involved a commercial motor vehicle on the part of your client's employee, Steven Gallaher. The use, maintenance and operation of the subject tractor and trailer on the part of your client is therefore regulated by the United States Department of Transportation Federal Motor Carrier Safety Administration Regulations (hereinafter FMCSA).

An investigation conducted of the subject collision revealed several FMCSA Regulation violations. As set forth in § 571.105, § 571.121, § 393.40, and § 393.52, <u>a commercial tractor-truck must be capable of stopping within certain parameters, governed by factors such as the gross weight of the vehicle together with a given speed</u>. Your client's employee was exceeding the speed limit of the traveled roadway. Further, the braking equipment on your client's tractor and trailer was not in compliance with the FMCSA. The defective braking system on said tractor and trailer is evidenced by the fact that your client's employee applied the brakes prior to impact, but was unsuccessful in bringing the tractor and trailer to a timely stop.

You will locate the applicable FMCSA Regulations under **Exhibit D** hereto.

### Calvin Bullard's Medical Treatment

Following the collision, Calvin Bullard was transported to his family physician, Dr. Franklin Bufford, at Auburn Urgent Care in Auburn, Alabama. Upon arrival at Dr. Bufford's office, Mr. Bullard reports *striking his head during the collision, loss of consciousness, neck pain, multiple contusions, shoulder pain, hand pain, elbow pain, forearm pain, arm pain, back pain, and complaints of a headache.* An examination

Harvey Jones
May 7, 2007
Page Three

revealed a *laceration in the back of his head*. Following consultation and evaluation, Mr. Bullard was prescribed *Celbrex, Cyclobenzaprine, Propozyphene (a/k/a Darvocet)* and discharged with instructions to follow up in 1-2 days.

Mr. Bullard continued to experience severe pain in his cervical spine with accompanying numbness radiating into his upper extremities. On July 3, 2006, Mr. Bullard returned to Auburn Urgent Care with complaints of *cervical pain, headaches, arm pain and shoulder pain*. Following consultation and evaluation, Dr. Edvin Larson instructed Mr. Bullard to undergo a CT Scan of his brain.

On July 3, 2006 Mr. Bullard reported to East Alabama Medical Center for CT Scan of his brain. Fortunately, Mr. Bullard's brain was found to not have suffered intracranial bleeding. Interestingly, an MRI or CT Scan of Mr. Bullard's cervical spine was not obtained.

On July 6, 2006, Mr. Bullard was referred to Herring Spine & Rehabilitation for conservative treatment of his cervical spine. Mr. Bullard reported complaints of *arm/shoulder pain, back pain, back stiffness, dizziness, ear buzzing, ear ringing, feet/toe numbness, hand/finger numbness, headaches, neck pain, neck stiffness, sleep difficulty, tension, burning sensation in his neck, pain associated with rotating his neck and pain in his shoulder*. Mr. Bullard reported that his *pain symptoms began following a collision* where the wrecker he was operating was struck from the rear by a tractor trailer. Mr. Bullard stated that he was leaning forward when his trailer was struck which caused his body to move forward and then backward. He *reported striking his head on the rear windshield*, which caused his *head to bleed and swell*.

Mr. Bullard received treatment from Dr. Ronnie Herring at Herring Spine & Rehabilitation over the course of six months. He was treated using manipulation and electrical stimulation. Due to a lack of consistent pain relief, Dr. Herring referred Mr. Bullard to Dr. Frazier Jones, an orthopaedic surgeon at The Orthopaedic Clinic in Opelika, Alabama.

On August 23, 2006 Mr. Bullard reported to Dr. Jones at The Orthopaedic Clinic for evaluation. A history of Mr. Bullard revealed that his *pain symptoms began following a tractor trailer collision on June 30, 2006*. It further revealed that conservative treatment, including chiropractic care and pain medicine, was failing to bring permanent relief. Following consultation, Dr. Jones elected to prescribe Mr. Bullard *Ultram* for his pain. If Mr. Bullard did not improve, he was instructed to return to The Orthopaedic Clinic at which point Dr. Jones would consider additional options.

Harvey Jones
May 7, 2007
Page Four

      While Mr. Bullard continued with chiropractic treatment, he reported back to Dr. Jones on September 11, 2006. He complained of *axial pain in his cervical spine* and occasional *paresthesias* (tingling/numbness) in his hand. Following consultation, Dr. Jones opined that Mr. Bullard's pain symptoms, at the time, did not warrant surgical intervention (i.e. pain had only persisted for one month) and offered Mr. Bullard epidural injections. Mr. Bullard declined an epidural injection and elected to continue with chiropractic care.

      Mr. Bullard returned to Dr. Jones on September 25, 2006 with continued complaints of cervical pain. He reported that the combination of therapy and pain medication was helping.

      On November 6, 2006 Mr. Bullard returned to Dr. Jones with complaints of cervical pain. He reported *recurrent stiffness in his cervical spine* and *occasional paresthesias in his hand*. Dr. Jones opined that he would recheck Mr. Bullard as needed if chiropractic care and anti-inflammatories did not bring permanent relief.

      Mr. Bullard continued treating with Dr. Herring through January 4, 2007 at which point it was determined that Mr. Bullard had reached maximum medical improvement with regards to chiropractic care.

      On January 22, 2007 Mr. Bullard returned to Dr. Jones for evaluation of his neck and right arm pain. Mr. Bullard reported having an *increase in pain symptoms*. As stated hereinabove, it was noted that *Mr. Bullard was at the point where chiropractic manipulations were of less and less benefit*. Dr. Jones noted that Mr. Bullard was on pain medication and anti-inflammatories and *nothing seemed to bring permanent pain* relief. Dr. Jones further that *little progress was being made as far as Mr. Bullard's discomfort*. Due to Mr. Bullard's symptoms and lack of improvement and his motion on his films, Dr. Jones opined that surgical intervention was not unreasonable. Dr. Jones further opined that *surgical intervention would have a reasonable chance of helping his pain*. Dr. Jones ordered an MRI can and instructed Mr. Bullard to return after an MRI was obtained.

      An MRI of Mr. Bullard's cervical spine was obtained on January 23, 2007. An MRI revealed *disc desiccation and slight bulge at C4-5*, a *disc protrustion at C5-6* and a *broad-based disc bulge at C6-7*.

      Mr. Bullard returned to Dr. Jones on January 25, 2007 following the results of his MRI scan. Dr. Jones stated that the injury was sustained in the collision and that an *anterior cervical fusion at C4-5 and C5-6 was the only remaining treatment option*.

Harvey Jones
May 7, 2007
Page Five

On February 8, 2007 Mr. Bullard returned to Dr. Jones for final pre-operative consultation. He reported *continued significant pain*. Dr. Jones opined that he had *exhausted nonoperative management*. Mr. Bullard returned to Dr. Jones on February 26, 2007 for pre-operative consultation. It was determined that Mr. Bullard's surgery would be performed on March 13, 2007 at East Alabama Medical Center in Opelika, Alabama.

### Cervical Fusion

Mr. Bullard reported to East Alabama Medical Center in Opelika, Alabama on March 13, 200 to undergo surgical repair of his cervical spine. He was placed under *general anesthesia*. A skin incision was outlined and infiltrated with 1% xylocaine with epinephrine. A *transverse skin incision was then made*. Dr. Jones *opened the incision and exposed the platysma*. Dr. Jones then *exposed the esophagus* and retracted it medially. He then identified the *C4-5 level and C5-6 level*. There were large anterior osteophytes present which Dr. Jones removed with a *TPS drill at C5-6*. He then decompressed the spinal cord and nerve roots bilaterally. He then placed a *7 millimeter corticocancellous graft at the C5-6* which was machined from Synthes. A similar procedure was carried out at the C4-5 interspace. He then placed a *30 millimeter plate with 16 millimeter screws* and affixed them over the area. The wound was then closed and Mr. Bullard was monitored as he recovered. For more information on an anterior cervical fusion, please see the diagram immediately following this narrative.

### Post Operative Care

On March 22, 2007 Mr. Bullard returned to Dr. Jones for post-operative evaluation and consultation. Mr. Bullard reported feeling much better than he did pre-surgery. He denied any pain, numbness or tingling in his arms or hands. He did report being sore in his neck, as expected. Mr. Bullard returned to Dr. Jones on April 5, 2007 where it was noted that Mr. Bullard could return to light duty work. *Importantly, Dr. Jones has no plans to remove the hardware installed for the fusion, meaning said hardware will remain permanently affixed to Mr. Bullard's cervical spine.*

Today, Mr. Bullard has returned to work as a tow truck driver. The *metal plates, screws and associated hardware will remain permanently in his cervical spine. They will not be removed.*

### Future Medical Care

Due to the serious nature of Mr. Bullard's injuries, the anterior cervical fusion performed, and his age, future medical care is certain. Based upon the mortality table provided by the Alabama Department of Industrial Relations, Mr. Bullard has a life

Harvey Jones
May 7, 2007
Page Six

expectancy of 30.92 years remaining. Future care is conservatively estimated at $2,000.00 per annum. You will find a copy of the mortality table produced by the Alabama Department of Industrial Relations under **Exhibit E**.

### Conclusion

Calvin Bullard has been caused much physical pain, suffering and mental anguish as a result of the injuries he sustained on June 30, 2006. He has further suffered and will continue to suffer from permanent injuries and impairments to his neck and body as a whole. He has had to endure the inconvenience and financial hardship of numerous doctors' appointments and has been caused to lose significant time from work. Your client should be aware that the numerous Federal Motor Carrier Safety Administration Regulations that were violated in regards to this collision imputes a punitive element to the level of damages recoverable in this matter. Based upon these circumstances, I am demanding **$600,000.00** to settle my client's personal injury claim. In the event this mater cannot be resolved without litigation, I have enclosed a copy of the Complaint I will file in the United States District Court for the Middle District of Alabama for your review under **Exhibit I**.

I look forward to hearing from you within ten (10) days of the date of this demand. If you have any questions, please do not hesitate to contact my office.

With best regards, I am

Very truly yours,

Michael W. Slocumb

MWS/gw
Encl.

**Exhibits**

| | |
|---|---|
| Accident Report | "A" |
| Photographs | "B" |
| Venue Information | "C" |
| FMCSA Regulations | "D" |
| Mortality Table | "E" |
| Lost Wage Support | "F" |
| Medical Expenses | "G" |
| Medical Records | "H" |
| Complaint | "I" |